UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> ) <br> (1) KIARA PADGETT and ) <br> (2) DOMINIQUE DUNLAP ) <br> ) <br> ) <br> ) | DOCKET NO. 3:22-cr-00268-RJC-DSC <br> **SUPERSEDING BILL OF** <br> **INDICTMENT** <br> <br> Violations: <br> 18 U.S.C. § 1349 <br> 18 U.S.C. § 1708 <br> 18 U.S.C. § 1709 |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

### INTRODUCTION

1. Defendant KIARA PADGETT was a resident of Waxhaw and Kings Mountain, North Carolina and was an employee of the U.S. Postal Service. PADGETT was a mail carrier with a postal route in west Charlotte, North Carolina. PADGETT was married to Defendant DOMINIQUE DUNLAP.

2. Beginning in or about August 2021 and continuing through on or about November 15, 2022, PADGETT, DUNLAP, and others known and unknown to the Grand Jury, engaged in a bank fraud conspiracy in the Western District of North Carolina, and elsewhere. PADGETT used her position as a U.S. Postal Service letter carrier to steal incoming and outgoing checks from her postal route in west Charlotte. Generally, PADGETT and DUNLAP sold the stolen checks, sometimes referred to as "slips," to others, including to individuals in Charlotte, North Carolina and in Maryland. The total face value of the checks stolen by PADGETT that were subsequently sold and provided to others was more than $8.8 million.

### The Bank Fraud Conspiracy

3. Beginning in at least August 2021, PADGETT, DUNLAP, and others known and unknown to the Grand Jury, engaged in a scheme and artifice to obtain funds under the custody and control of financial institutions by stealing checks, including from the U.S. Postal Service, resulting in attempted losses of over $8.8 million to banks and account holders.

4. PADGETT stole checks that she obtained from her postal route. For example:

   a. In or about October 2021, PADGETT stole a check for $2,691.00 written on the account of the United States Treasury and made payable to Victim R.F. located on her postal route.

   b. In or about November 2021, PADGETT stole a check for $29,906.00 written on the account of the United States Treasury and made payable to Victim Company F.C. located on her postal route.

   c. In or about March 2022, PADGETT stole a check for $5,000.00 made payable to Victim Company G.M. located on her postal route.

   d. In or about March 2022, PADGETT stole a check for $2,660.19 written on the account of Victim Company H.M. located on her postal route.

   e. In or about March 2022, PADGETT stole a check for $2,870.98 payable to Victim Company K.G. located on her postal route.

   f. In or about March 2022, PADGETT stole a check for $6,732.20 payable to Victim Company P.P. located on her postal route.

   g. In or about March 2022, PADGETT stole a check for $3,320.75 payable to Victim Company S.B. located on her postal route.

   h. In or about March 2022, PADGETT stole a check for $6,420.00 payable to Victim Company C.I. located on her postal route.

   i. In or about April 2022, PADGETT stole a check for $10,199.41 written on the account of the United States Treasury and made payable to Victim Company M.C. located on her postal route.

   j. In or about June 2022, PADGETT stole a check for $2,497.94 made payable to Victim Company C.F. located on her postal route.

5. DUNLAP sold checks stolen by PADGETT to other individuals, including to Terrell Hager, charged elsewhere. DUNLAP communicated with Terrell Hager about the sale and negotiation of stolen checks over text messages, generally on the private messaging application Telegram. For example:

   a. On or about October 17, 2021, DUNLAP sent a text message to Terrell Hager stating, "You can sell the slips out there by yo way??" After Terrell Hager responded, in part, "We can sell em in the group chats I'm in," DUNLAP responded, "Bet let's link this week. I'll get you the slips for 75-100 and you keep whateva , sell em

for 200-250."

  b. On or about October 28, 2021, Terrell Hager sent a text message to DUNLAP asking, "You get any new slips today we can post ?" DUNLAP responded, "Waiting on it now."

  c. On or about February 10, 2022, DUNLAP sent a text message to Terrell Hager with a photograph of a check for $58,769.03 made payable to Victim Company C.I. located on PADGETT's postal route.

  d. On or about March 9, 2022, DUNLAP sent two text messages to Terrell Hager with photographs of the corners of checks stolen from PADGETT's postal route. Further investigation revealed that these were photographs of a check to Victim Company S.I. for $53,872.50 and a check to Victim Company S.E. for $98,217.00.

  e. On or about May 14, 2022, DUNLAP sent a text message to Terrell Hager with a photograph of a stack of stolen mail.

  f. On or about June 9, 2022, DUNLAP sent a text message to Terrell Hager with a screenshot showing a bank account deposit into an account ending 5718 in the amount of $158,280.22. Further investigation revealed that on or about June 2, 2022, an unknown conspirator fraudulently deposited a check for $158,180.22 that was made payable to S.I.S., a business located on PADGETT's postal route, into a co-conspirator's account at TD Bank ending in 5718.

  6. Co-conspirators, known and unknown to the Grand Jury, opened bank accounts at financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC) and the National Credit Union Share Insurance Fund, including Truist, Bank of America, Wells Fargo, Bank of the Ozarks, and Navy Federal Credit Union (NFCU) (the Victim Financial Institutions) in the names of identity theft victims and in the names of other co-conspirators. Co-conspirators, known and unknown to the Grand Jury, deposited the stolen checks into these accounts and withdrew the funds as cash. For example, on or about the dates described below, co-conspirators, known to the Grand Jury, deposited the stolen checks as described below:

|    | Date       | Description of Check                                                  | Where deposited                              |
|----|------------|-----------------------------------------------------------------------|----------------------------------------------|
| a. | 10/27/2021 | U.S. Treasury check for $2,691.00 made payable to Victim R.F.         | NFCU account in Maryland ending in *0754     |
| b. | 12/21/2021 | U.S. Treasury check for $29,906.00 made payable to Victim Company F.C.| NFCU account in Maryland ending in *0754     |
| c. | 3/17/2022  | Check for $5,000 made payable to Victim Company G.P.                  | Truist ATM in Charlotte, NC                  |

|    | Date      | Description of Check                                              | Where deposited                                    |
|----|-----------|-------------------------------------------------------------------|----------------------------------------------------|
| d. | 3/18/2022 | Check for $2,660.19 made payable to Victim Company D.I.           | Truist ATM in Charlotte, NC                        |
| e. | 3/18/2022 | Check for $2,870.98 made payable to Victim Company K.G.           | Truist ATM in Charlotte, NC                        |
| f. | 3/21/2022 | Check for $3,320.75 made payable to Victim Company S.B.           | Truist ATM in Charlotte, NC                        |
| g. | 3/21/2022 | Check for $6,732.20 made payable to Victim Company P.P.           | Truist ATM in Charlotte, NC                        |
| h. | 3/23/2022 | Check for $6,420.00 made payable to Victim Company C.I.           | Truist ATM in Charlotte, NC                        |
| i. | 4/28/2022 | U.S. Treasury check for $10,199.41 made payable to Victim Company M.C. | NFCU account in Maryland ending in *0754      |

7. Co-conspirators, known and unknown to the Grand Jury, made payments to PADGETT for the stolen checks. For example:

    a. Between August 2021 and June 2022, a co-conspirator sent PADGETT payments totaling $6,498.00 through the Zelle payment application. Some of the payments made to PADGETT came from the same NFCU account where stolen checks had been deposited.

8. Co-conspirators, known and unknown to the Grand Jury, made payments to DUNLAP for the stolen checks. For example:

    a. On or about June 5, 2022, co-conspirator R.C. sent payment totaling $200 to DUNLAP through the CashApp payment application. In June and July 2022, at least five stolen checks from the Charlotte area were deposited into co-conspirator R.C.'s Bank of America Account. Two of the stolen checks were addressed to businesses on PADGETT's route and one of those checks was posted for sale on Terrell Hager's Telegram channel.

    b. On or about July 21, 2022, a co-conspirator, who was the owner of the NFCU account ending in *0754 where stolen checks had been deposited, sent and attempted to send DUNLAP payments totaling approximately $3,000 through the CashApp payment application.

    c. On or about August 10, 2022, Terrell Hager sent payments totaling $500 to DUNLAP over the CashApp payment application as payment for stolen checks.

    d. On or about October 29, 2022, co-conspirator D.B. transferred $300 to DUNLAP through the CashApp payment application. This payment occurred after D.B. deposited checks stolen from PADGETT's postal route into a bank account at Bank of

America.

## COUNT ONE
(Conspiracy to Commit Bank Fraud – 18 U.S.C. § 1349)

9. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 8 of the Superseding Bill of Indictment, and further alleges that:

10. From in or about August 2021 to on or about November 15, 2022, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

**(1) KIARA PADGETT and**
**(2) DOMINIQUE DUNLAP**

did knowingly and willfully combine, conspire, confederate, and agree with one another, and with others known and unknown to the Grand Jury, to engage in a scheme and artifice to obtain money, funds, or credits under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344.

### Object of the Conspiracy

11. *Financial Institution Fraud:* It was a part and an object of the conspiracy that PADGETT, DUNLAP and their co-conspirators, would and did execute and attempt to execute, the above-described scheme and artifice to obtain moneys owned by, or in the custody or control of, one or more of the Victim Financial Institutions, by means of materially false and fraudulent pretenses, representations, and promises in violation of Title 18, United States Code, Section 1344(2).

### Manner and Means

12. PADGETT, DUNLAP, and their co-conspirators carried out the conspiracy in the manner and means as set forth in paragraphs 1 through 8 above, among others.

All in violation of Title 18, United States Code, Section 1349.

# COUNTS TWO THROUGH ELEVEN
## 18 U.S.C. § 1709
### (Theft of Mail by Postal Employee)

13.     The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 8 of the Superseding Bill of Indictment, and further alleges that:

14.     On or about the dates set forth below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

## (1) KIARA PADGETT,

a United States Postal Service employee, did embezzle, steal, abstract, or remove a letter, postal card, package, bag, or mail or any article or thing contained therein, as described below, which had been entrusted to the defendant or which had come into the defendant's possession intended to be conveyed by mail or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service:

| COUNT | Date | Stolen Check |
|---|---|---|
| Two | 10/22/2021 | U.S. Treasury check for $2,691.00 made payable to Victim R.F. |
| Three | 11/16/2021 | U.S. Treasury check for $29,906.00 made payable to Victim Company F.C. |
| Four | 3/17/2022 | Check for $5,000 made payable to Victim Company G.P. |
| Five | 3/18/2022 | Check for $2,660.19 made payable to Victim Company D.I. |
| Six | 3/18/2022 | Check for $2,870.98 made payable to Victim Company K.G. |
| Seven | 3/21/2022 | Check for $3,320.75 made payable to Victim Company S.B. |
| Eight | 3/21/2022 | Check for $6,732.20 made payable to Victim Company P.P. |
| Nine | 3/23/2022 | Check for $6,420.00 made payable to Victim Company C.I. |
| Ten | 4/19/2022 | U.S. Treasury check for $10,199.41 made payable to Victim Company M.C. |
| Eleven | 5/26/2022 | Check for $2,497.94 made payable to Victim Company C.F. |

All in violation of Title 18, United States Code, Sections 1709 and 2.

# COUNTS TWELVE THROUGH FIFTEEN
## (Possession of Stolen Mail Matter – 18 U.S.C. § 1708)

15. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 8 of the Superseding Bill of Indictment, and further alleges that:

16. On or about the dates set forth below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### (2) DOMINIQUE DUNLAP

did buy, receive or unlawfully have in his possession, any letter, postal card, package, bag or any article or thing contained therein, specifically the checks as described below, which had been stolen, taken, embezzled, or abstracted, knowing the same to have been stolen, taken, embezzled, or abstracted:

| COUNT | Date | Stolen Check |
|---|---|---|
| Twelve | 2/10/2022 | Check to Victim Company C.I. for $58,769.03 |
| Thirteen | 3/9/2022 | Check to Victim Company S.I. for $53,872.50 |
| Fourteen | 3/9/2022 | Check to Victim Company S.E. for $98,217.00 |
| Fifteen | 6/2/2022 | Check to Victim Company S.I.S. for $158,280.22 |

All in violation of Title 18, United States Code, Sections 1708 and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a.    All property which constitutes or is derived from proceeds of the violations set forth in this Superseding Bill of Indictment; and

    b.    If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds set forth above: a forfeiture money judgment in the amount of at least $13,698, such amount constituting the proceeds of the offenses set forth herein.

**A TRUE BILL:**

**DENA J. KING**
**UNITED STATES ATTORNEY**

**JENNY GRUS SUGAR**
**ASSISTANT UNITED STATES ATTORNEY**

8