UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:22-CR-00268 |
|---|---|---|
| | ) | |
| v. | ) | **GOVERNMENT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| **KIARA PADGETT** | ) | |
| | ) | |

COMES NOW the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and respectfully submits this sentencing memorandum. As fully set forth below, the Government recommends a sentence of 41 to 51 months imprisonment. Such a sentence would be sufficient, but not greater than necessary, to fulfill the goals of sentencing.

## I. PROCEDURAL BACKGROUND

On November 15, 2022, the United States filed an eleven-count Bill of Indictment charging Defendant Kiara Padgett ("PADGETT") with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), and theft of mail by a postal employee, in violation of 18 U.S.C. §§ 1709 and 2 (Counts 2-11).[1] (Doc. No. 3). On March 22, 2023, a Superseding Bill of Indictment was filed which named Dominique Dunlap ("Dunlap"), PADGETT's husband, as a co-defendant. (Doc. No. 21).[2] On September 15, 2023, PADGETT pleaded guilty to Count 1 pursuant to a signed plea agreement with the United States. (Doc. No. 35).

Pursuant to the plea agreement, the parties agreed to make the following joint recommendations, *inter alia*, as to the United States Sentencing Guidelines:

- The amount of attempted loss that was known to or reasonably foreseeable by the

---

[1] Co-conspirator Terrell Hager ("Hager") was charged by a separate Bill of Indictment. 3:22-cr-00267-RJC. On or about October 4, 2024, Hager was sentenced to 36 months' imprisonment. (Doc. No. 58).
[2] On or about January 5, 2026, Dunlap was sentenced to 70 months' imprisonment. (Doc. No. 70).

1

defendant was in excess of $3,500,000 but less than $9,500,000;

- The amount of actual loss that is known as of the date of the plea agreement was in excess of $1,500,000 but less than $3,500,000; and

- The offense involved more than 10 victims.

## II. FACTUAL BACKGROUND

PADGETT was an employee of the U.S. Postal Service, specifically, a mail carrier with a postal route in west Charlotte, North Carolina. (PSR ¶ 15). Beginning in or about August 2021 and continuing through on or about November 15, 2022, PADGETT, Dunlap, Hager, and others engaged in a bank fraud conspiracy. (*Id.* at ¶ 16). PADGETT used her position as a U.S. Postal Service letter carrier to steal incoming and outgoing checks from her postal route in west Charlotte. (*Id.* at ¶ 17).



Generally, PADGETT and Dunlap sold the stolen checks, sometimes referred to as "slips," to others, including to individuals in Charlotte, North Carolina and in Maryland. (*Id.* at ¶ 29). Notably, Dunlap sold stolen checks to Hager who served as the administrator and owner of a Telegram channel called "Hunnitband Swipe School." (*Id.* at ¶ 33; 3:22-cr-00267-RJC, Doc. No.

28). This Telegram channel sold over 400 checks with a total face value over $7.3 million that were stolen from the U.S. mail. (3:22-cr-00267-RJC, Doc. No. 28). The total face value of the checks stolen from PADGETT's postal routes that were subsequently sold and provided to others was more than $8.8 million. (PSR at ¶ 31). The amount of actual loss known as of the date of Defendant's guilty plea was in excess of $1,500,000 but less than $3,500,000. (*Id.*).

Co-conspirators would subsequently make payments to PADGETT and Dunlap for the stolen checks. (*Id.* at ¶¶ 35-36). Thereafter, co-conspirators opened bank accounts at financial institutions in the names of identity theft victims and in the names of other co-conspirators where the stolen checks were subsequently deposited, and funds were withdrawn. (*Id.* at ¶ 34).

## III. DEFENDANT'S OBJECTION TO LOSS AMOUNT

Defendant's objection states that the actual loss amount of $1,500,000 to $3,500,000 should be applied rather than the intended loss of $3,500,000 to $9,500,000. (Doc. No. 51). In this case, the total value of checks stolen during the conspiracy was more than $8.8 million. This included more than $7.3 million in stolen checks that were posted for sale on Hager's Telegram channel. The actual loss was between $1,500,000 and $3,500,000 because not all the stolen checks were negotiated. The United States Sentencing Guidelines are clear that "loss is the greater of actual loss or intended loss." U.S.S.G. §2B1.1(b)(1)(A). In this case, the intended loss is the face value of the stolen checks as it was "the pecuniary harm that the defendant purposefully sought to inflict" even if it "would have been impossible or unlikely to occur." U.S.S.G. §2B1.1(b)(1)(C)(ii). Accordingly, the Government submits that the application of the eighteen-point enhancement for loss is correct.

## IV. LEGAL FRAMEWORK

In determining the appropriate sentence, "a district court must begin by correctly calculating the applicable Guidelines range." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008). The advisory Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice. . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). "[A] Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." *Id*. at 351. Ultimately, however, the appropriate sentence is for the District Court to determine based on the factors enumerated in 18 U.S.C. § 3553(a), and "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by appellate courts for reasonableness pursuant to an abuse of discretion standard." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011).

## V. THE § 3553(a) FACTORS

### A. Nature and Circumstances of the Offense

The nature and circumstances of Defendant's crime warrants a lengthy sentence of incarceration. Through the course of the conspiracy, lasting only approximately *fifteen* months, PADGETT and her co-conspirators stole checks totaling more than $8.8 million and successfully negotiated checks totaling more than $1.5 million. PADGETT's crimes were not an aberration, nor a one-time lapse in judgment. Rather, they constituted a pervasive, systematic, and well-thought-out course of conduct. PADGETT's schemes required preparation, deceit, and

persistence. Check fraud schemes of this magnitude often require the involvement of a collusive USPS employee. Here, PADGETT abused her position of trust as a USPS mail processing clerk by routinely stealing checks from her postal route.

**B.     Adequate Deterrence and Protection of the Public**

PADGETT's conduct violates individuals' fundamental expectations of safety and confidence in the United States mail system and erodes the trust in the USPS. Unfortunately, there has been a surge in check fraud schemes that target the United States mail as fraudsters seek to steal personal checks, business checks, and government-issued checks, including tax refunds check and checks from government assistance programs. As highlighted by the Financial Crimes Enforcement Network in February 2023, "criminals have been increasingly targeting the U.S. Mail since the COVID-19 pandemic to commit check fraud."[3] "From March 2020 through February 2021, the USPIS received 299,020 mail theft complaints, which was an increase of 161 percent compared with the same period a year earlier." *Id.* The public has an expectation that the mail system is secure and reliable. Crimes such as this challenge the integrity of the United States mail system and decrease the public's trust in its efficacy. A significant sentence serves to deter others, from committing this crime.

Fraud schemes such as this require specific and general deterrence that only can be accomplished through lengthy periods of incarceration. Regarding specific deterrence and the need to protect the public, according to a report issued by the U.S. Sentencing Commission, longer sentences deter recidivism. *Length of Incarceration and Recidivism*, Ryan Cotter, PH.D., April 2020, at 30 ("The Commission found a statistically significant deterrent effect for offenders

---

[3]    Available at: https://www.fincen.gov/sites/default/files/shared/FinCEN%20Alert%20Mail%20Theft-Related%20Check%20Fraud%20FINAL%20508.pdf.

incarcerated for more than 60 months when compared to similar offenders incarcerated for shorter periods of time.").[4] A significant sentence is needed to protect the public from Defendant.

As to general deterrence, as the Eleventh Circuit has noted, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id.* at 1227. Put differently, as the Seventh Circuit has explained, "[t]he system of penalties under the Guidelines is constructed on the belief that . . . longer sentences of imprisonment, are more effective deterrents. A large body of evidence supports this intuition." *United States v. Turner*, 998 F.2d 534, 536 (7th Cir. 1993).

Moreover, cases such as this, involving a defendant with a sophisticated scheme, can be very difficult to detect. Where offenses are lucrative and difficult to detect and punish, general deterrence is key. *See United States v. Morgan*, 635 Fed. Appx. 423, 450 (10th Cir. 2015) ("Deterrence is a crucial factor in sentencing decisions for economic and public corruption crimes . . ."); *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014) ("In a number of opinions . . . we have explained that general deterrence is an important factor in white-collar cases, where the motivation is greed."). The Fourth Circuit has explicitly recognized the importance of incarceration for defendants convicted of white-collar crimes such as tax evasion, theft, fraud and embezzlement. *See United States v. Engle*, 592 F.3d 495, 501 (4th Cir. 2010).

---

[4] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf.

Thus, a significant sentence is necessary to protect the public from Defendant and to deter others, especially USPS employees, from committing similar fraud schemes.

## VI. CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of between 41-51 months imprisonment.

Respectfully submitted this the 9th day of February, 2026 by:

RUSS FERGUSON
UNITED STATES ATTORNEY

*/s/ Eric A. Frick*
Special Assistant United States Attorney
United States Attorney's Office
N.C. Bar #49212
227 West Trade Street, Suite 1650
Charlotte, N.C. 28202
Telephone: (704) 338-6222
E-mail: Eric.frick@usdoj.gov

## CERTFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024 and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this the 9th day of February, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY


*/s/ Eric A. Frick*
Eric A. Frick
Special Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street Suite 1700
Charlotte, North Carolina 28202
Telephone: 704.344.6222
E-mail: eric.frick@usdoj.gov